UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEF EITAN and RAN NIR,<br><br>                          Petitioners,<br><br>-against-<br><br>ATERIAN, INC. and TRUWEO, LLC,<br><br>                          Respondents. | Case No. 1:22-cv-07905 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Petitioners Josef Eitan ("Eitan") and Ran Nir ("Nir," and together with Eitan, "Petitioners") move pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to compel Respondents Aterian, Inc. and Truweo, LLC ("Respondents") to arbitrate specific issues related to the Earn-Out Payment under the Stock Purchase Agreement ("SPA" or "Agreement") between the parties. ECF No. 1, 7 ("Petition" or "Pet.").[1]

Petitioners contend that the present dispute regarding the proper calculation of the Earn-Out Payment under the SPA is subject to the dispute resolution process in the SPA that provides that certain disputes shall be resolved by an independent accountant, whose decision is final, conclusive, and binding on the parties. *See generally*, Pet. Respondents urge the Court to deny the motion to compel because Petitioners have not established the proper scope of the dispute that should be resolved by the independent accountant, as the dispute resolution process under the SPA requires. *See generally*, ECF No. 22 ("Opp. Br.").

---

[1] The Petition to compel arbitration, with exhibits, was initially filed on September 15, 2022, but was unsigned. ECF No. 1. On September 16, 2022, a signed Petition was re-filed. ECF No. 7. The Court will refer to Exhibits A to F to the original Petition because the exhibits were not refiled on September 16, 2022. *See* ECF Nos. 1-1 to 1-6.

For the reasons stated below, the Court agrees that the parties' present dispute falls within the scope of the SPA dispute process and is therefore subject to resolution by an independent accountant. Accordingly, Petitioners' motion to compel is GRANTED.

## BACKGROUND

The facts stated herein are taken from the Petition and the papers submitted by the parties in support of and in opposition to Petitioners' motion to compel arbitration. *See* ECF No. 11 ("Declaration of Josef Eitan" or "Eitan Decl."); ECF No. 12 ("Declaration of Andrew Klein" or "Klein Decl."); ECF Nos. 1-1 to 1-6 (Exhibits A to F to the Petition, including the SPA at ECF No. 1-1); ECF No. 23 ("Declaration of Charles K. Blank" or "Blank Decl."); ECF No. 24 ("Declaration of Joseph Risico" or "Risico Decl."); ECF Nos. 24-1 to 24-10 (Exhibits A to J to the Risico Declaration submitted in opposition to the Petition). The Court applies a "standard similar to that applicable to a motion for summary judgment" in evaluating a motion to compel arbitration under § 4 of the FAA. *Bensadoun v. Jobe-Riat*, 316 F. 3d 171, 176 (2d Cir. 2003). Under this standard the Court considers all relevant, admissible evidence submitted by the parties and draws all reasonable inferences in favor of the non-moving party. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Accordingly, the facts set forth below are undisputed, other than where noted, and in those cases all inferences are drawn in the Respondents' favor.

### A. The Stock Purchase Agreement (SPA) and Dispute Notice

On May 5, 2021, the parties executed a Stock Purchase Agreement that set forth the terms by which the Respondents purchased the company, Photo Paper Direct Ltd ("the Company"), from Petitioners. Pet. ¶ 2; *see* SPA. Under Section 2.08 of the SPA, as further consideration for the stock purchase, Respondents were obligated to pay Petitioners an "Earn-

Out Payment" that is based on applying an "Earn-Out Multiplier" to the Company's 2021 earnings before interest, taxes, depreciation, and amortization – that is, the "EBITDA." SPA §§ 2.08, 1.01. The SPA further required Respondents to deliver an "Earn-Out Statement" setting forth the Respondents' "good faith calculation" of the 2021 EBITDA and the Earn-Out Payment. *Id.* § 2.08(a).

Section 2.08(b) of the SPA provides that Petitioners may dispute the amount and calculation of the Earn-Out Payment by following the procedures set forth in § 2.07(c) of the SPA. *Id.* § 2.08(b). Section 2.07(c) of the SPA sets forth a dispute resolution procedure for disputes related to "Post-Closing Statements." *Id.* § 2.08(c). The Earn-Out section of the SPA provides that for purposes of disputes regarding the Earn-Out Payment, all references in Section 2.07(c) to Post Closing Statements "shall be deemed to refer to the Earn-Out Statement." *Id.* § 2.08(b).

Therefore, Section 2.07(c), as applied to a dispute regarding the Earn-Out Payment, provides for the following timeframe for raising a dispute:

> Within thirty (30) days after receipt by [Eitan] of the [Earn-Out Statement], [Eitan] shall deliver written notice to the [Respondents] of any dispute [Eitan] has with respect to the calculation, preparation or content of the [Earn-Out Statement] (the "Dispute Notice"); provided, that if [Eitan] does not deliver any Dispute Notice to Purchaser within such thirty (30)-day period, the [Earn-Out Statement] will be final, conclusive and binding on each of the Parties.

*Id.* § 2.07(c) (emphasis in original).

Section 2.07(c) further details what must be presented in that Dispute Notice:

> The Dispute Notice shall set forth in reasonable detail (i) any item on the [Earn-Out Statement] that [Eitan] disputes and (ii) the correct amount of such item. All undisputed amounts will be final, conclusive and binding on each of the Parties.

*Id*.  After receipt of the Dispute Notice, the parties are required to negotiate in good faith to try to resolve the dispute during what is deemed a Reconciliation Period.  Specifically, Section 2.07(c) states:

> Upon receipt by [Respondents] of a Dispute Notice, [Respondents] and [Eitan] shall negotiate in good faith to resolve any dispute set forth therein.  If [Respondents] and [Eitan] resolve any such dispute within fifteen (15) days after delivery of the Dispute Notice (the "Reconciliation Period"), then the Adjustment Amount shall be adjusted by such resolution, and the resolution of each such dispute shall become final, conclusive and binding on each of the Parties.  If [Eitan] and the [Respondents] cannot resolve all such disputes during the Reconciliation Period, then [Eitan] and [Respondents] jointly shall engage, within ten (10) business days following the expiration of the Reconciliation Period, the Independent Accountant to resolve any remaining dispute.

*Id.* (emphasis in original).  Section 1.01 of the SPA defines "Independent Accountant" as "a nationally recognized firm of independent certified public accountants to be mutually agreed on, which shall be one of the big four accounting firms, other than Company's accountant, Seller's accountant and Purchaser's Accountant."  *Id.* § 1.01.

Section 2.07(c) continues on to detail the process by which the Independent Accountant will review work papers or other documents, and render a written resolution "of each disputed item as promptly as practicable, and in any event not more than fifteen (15) days following the engagement of the Independent Accountant." *Id.* § 2.07(c).  With respect to undisputed items, "[t]he Independent Accountant shall resolve all remaining undisputed items based solely on the applicable definitions and other terms in this Agreement and the materials furnished by [Respondents] and [Eitan] without independent review." *Id*.

Section 2.07(c) finally provides, in relevant part, that:

> All determinations made by the Independent Accountant, and the [Earn-Out Statement], as modified by the Independent Accountant, will be final, conclusive and binding on the Parties.  All amounts

4

> that are final, conclusive and binding on the Parties pursuant to this <u>Section 2.07</u> shall be enforced in a court of law absent manifest error and fraud.

*Id*. (emphasis in original).

### B. The Present Dispute

Under the SPA, the Earn-Out Statement and the Earn-Out Payment were due on February 10, 2022. *Id.* §2.08(a). On February 10, 2022, Respondents provided Petitioners with an Earn-Out Statement containing Respondents' calculation of the 2021 EBITDA and the resultant Earn-Out Payment amount. Risico Decl., Ex. B. Respondents used an Earn-Out Multiplier of 0 because they calculated the 2021 EBITDA to be less than the Measurement Date EBITDA. Risico Decl., Ex. B; *see* SPA § 1.01. Therefore, Respondents' Earn-Out Statement reflected an Earn-Out Payment of 0. Risico Decl., Ex. B.

Within the requisite thirty (30) days under the SPA, on February 24, 2022, Eitan served on Respondents an Earn-Out Payment Dispute Notice ("Dispute Notice"). Risico Decl., Ex. C. In this Dispute Notice, Eitan contested that Respondents did not provide back up or supporting documentation for the Earn-Out Statement. *Id*. at 1. Among other things, Eitan objected to "each deduction from EBITDA" claimed in the February 10 Earn-Out Statement because the "proposed deductions are unrelated to EBITDA and are irrelevant to the Earn-Out Payment calculation." *Id*. Eitan provided examples of what it deemed to be improper deductions. *Id*. The Dispute Notice further stated that the Earn-Out Statement did not provide sufficient details to assess whether the total cost and salary expenses for the Head of Finance were included, which, according to Eitan, they should not have been. *Id*. Eitan attached to the Dispute Notice a letter dated February 21, 2021 from BSG Valentine, Chartered Accountants, with what Eitan deems to be "the correct" calculation of the 2021 EBITDA. Risico Decl., Ex. C at 2-4. The

Dispute Notice requested that the parties negotiate in good faith for the next fifteen days to attempt "to resolve this dispute." *Id*. at 2.  Eitan further requested that Respondents provide background papers "on which each line of the Earn-Out Statement is based" and requested a meeting on February 28, 2022 to begin the negotiations.  *Id*.

The parties then engaged in negotiations over the course of the next few months even though the contractual Reconciliation Period described in Section 2.07(c) is only 15 days.  *See* Pet. ¶¶ 28, 32-37; Opp. Br. at 6-8.  Respondents have provided the Court with details and documents related to these negotiations. *See* Risico Decl., Exs. D-G.  Petitioners object to consideration of this negotiation dialogue under Federal Rule of Evidence 408 and Section 9.11 of the SPA, which provides the following:

> All offers of compromise or settlement among the Parties . . . in connection with the attempted resolution of any dispute under this Agreement shall be deemed to have been delivered in furtherance of a settlement and shall be exempt from discovery and production and shall not be admissible into evidence (whether as an admission or otherwise) in any Proceeding for the resolution of such dispute.

SPA § 9.11; *see* ECF No. 25 ("Reply Br.") at 3.  Petitioners point out that Respondents labeled the email correspondence between the parties during this time as "**Communication under Rule 408 of the Federal Rules of Evidence**."  Risico Decl., Ex. D (emphasis in original); *see* Reply Br. at 6-7.  In any event, it is undisputed that the parties were not able to resolve the issues raised in the Dispute Notice through the negotiation process during the Reconciliation Period.

On July 13, 2022, Eitan advised Respondents that he was "left with no alternative but to demand engagement of an independent accountant in accordance with section 2.07 and 2.08 of the stock purchase agreement."  Risico Decl., Ex. H at 1.  Eitan provided options for independent accountants.  *Id*.  On July 26, 2022, Respondents relayed that "[i]f we don't have an agreed-upon

list of items to submit to an independent accountant," the parties cannot "provide the directions to the independent accountant that are required by Section 2.07(c) of the SPA." *Id*. at 1.

On July 29, 2022, Petitioners sent Respondents a formal "Notice to Engage Independent Accountant Pursuant to Stock Purchase Agreement dated May 5, 2021." Risico Decl., Ex. I. The notice summarized the earlier Dispute Notice as follows:

> In the Dispute Notice, Mr. Eitan disputed the entirety of the [Respondent's] erroneous Earn-Out Statement, including inter alia, [Respondent's] "Provisional" and "Final" 2021 EBITDA calculations for the Company . . . , noting that the Earn-Out Statement was plainly inaccurate and not compliant with [Respondent's] contractual obligations. Mr. Eitan also noted among other items indisputably incorrect deductions to EBITDA made by Purchaser, questions concerning the inclusion or exclusion of costs and salary expenses, and the manifestly irreconcilable and unsupportable Earn-Out Calculation.

*Id*. at 1-2. Petitioners stated that they were ready to proceed with engaging the Independent Accountants and requested that Respondents contact them to secure the engagement. *Id*. at 2-3.

On August 10, 2022, Respondents replied that "[a] blanket statement disputing all items of the earn-out statement is clearly insufficient." Risico Decl., Ex. J at 2. Respondents further advised that:

> You appeared to be following the process of the SPA by sending your calculation of the correct amounts of disputed items attached to an email from . . . BSG Valentine on March 9, 2022. However, after that you reverted to making open-ended statements simply disputing the earn-out statement without providing your view of the correct amount.

*Id*. The Respondents closed by stating that until Petitioners "d[id] that," they "have no idea what's being submitted to the independent accountant and do not agree that the parties have reached the stage of the dispute at which the independent accountant can be appointed." *Id*.

7

On August 11, 2022, Petitioners objected to Respondents' position and again pressed for the engagement of the Independent Accountant by August 12, 2022 – ten business days after the formal demand was sent on July 29, 2022. *Id*. at 1.

Respondents continued to refuse to jointly retain the independent accountant and Petitioners filed this petition to compel arbitration on September 15, 2022. *See* Pet. Petitioners filed their brief and exhibits in support of their motion to compel arbitration on September 30, 2022. *Id*. On October 28, 2022, Respondents filed their brief and exhibits in opposition to the motion to compel. Opp. Br. On November 4, 2022, Petitioners filed their reply brief. Reply Br.

## DISCUSSION

### A. Legal Standard

In considering a motion to compel arbitration under the FAA, 9 U.S.C. § 4, courts apply "a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Nicosia*, 834 F.3d at 229); *see also Bensadoun*, 316 F.3d at 175. Under this standard, "the Court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561-62 (S.D.N.Y. 2013). If the facts in the record are undisputed, and "require the matter of arbitrability to be decided against one side or the other as a matter of law," the Court "may rule on the basis of that legal issue and avoid the need for further court proceedings." *Meyer*, 868 F.3d at 74 (internal citation and quotation marks omitted).

Under Section 2 of the FAA, commercial "agreement[s] . . . to submit to arbitration" are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The statute "revers[ed] centuries of judicial hostility to arbitration agreements, [and] was designed to allow parties to avoid the costliness and delays of litigation, and to place arbitration agreements upon the same footing as other contracts." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)). The Supreme Court has made clear that the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). In turn, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Daly*, 939 F.3d at 421 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Notwithstanding this, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citations omitted).

The parties agree that under the FAA, the Court's role here is limited to determining: "(i) whether a valid agreement or obligation to arbitrate exists, and (ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Jacobs v. USA Track & Field*, 374 F. 3d 85, 88 (2d Cir. 2004) (quoting *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003)); Pet. Br. at 3; Opp. Br. at 9. "In interpreting an arbitration agreement, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'" *Davarci v. Uber Techs., Inc.*,

9

No. 20-cv-09224 (VEC), 2021 WL 3721374, at *5 (S.D.N.Y. Aug. 20, 2021) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995)).

### B. Agreement to Arbitrate

As a threshold matter, the parties do not dispute that there is a valid agreement to arbitrate contained in Section 2.07(c) of the SPA despite the fact that the word "arbitrate" is not used. *See* Pet. Br. at 3; Opp. Br. at 9-10. There is no dispute that the SPA is a signed enforceable agreement between the parties. *See* SPA. The parties agree that the SPA provides that unresolved disputes related to the Earn-Out Payment shall be resolved by an Independent Accountant, whose determination shall be "final, conclusive and binding on the Parties." SPA § 2.07(c); *see also id.* § 2.08(b). Language such as this that "clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution" constitutes an enforceable arbitration clause. *McDonnell Douglas Finance Corp. v. Penn. Power & Light Co.*, 858 F.2d 825, 830-31 (2d Cir. 1988) (holding that contract language providing for resolution of dispute by an independent tax counsel was an enforceable arbitration clause); *see also Bakoss v. Certain Underwriters at Lloyd's of London*, 707 F.3d 140, 144 (2d Cir. 2013) (affirming that clause requiring third party physician to make a final and binding decision regarding contractual determination of disability was an arbitration agreement under the FAA); *Duafala v. Globecomm Systems*, 91 F. Supp. 3d 330, 334-35 (E.D.N.Y. 2015) (finding that merger agreement provision stating that disputes related to calculation of EBITDA shall be resolved by "recognizable, reputable and impartial certified public accounting firm" whose determination is "final, binding and conclusive" was an enforceable arbitration agreement); *HBC v. Harris Corp.*, No. 13-cv-06327 (JMF), 2014 WL 6982921, at *4-5 (S.D.N.Y Dec. 10, 2014) (purchase price resolution provision requiring that disputes be resolved by accountant Grant

10

Thornton was an arbitration clause under the FAA). Respondents do not contest that Petitioners filed a timely Dispute Notice, invoking this arbitration clause.

### C. Refusal to Arbitrate

Respondents argue instead that they have not refused to arbitrate and instead "have simply sought to have Petitioners comply with the dispute resolution procedures set forth in the parties' agreement" such that the scope of the dispute would then be clearly defined for the Independent Accountant. Opp. Br. at 9-10. Creating such a defined scope, through a "disputed items list," Respondents argue, is a necessary and standard prerequisite for the engagement of the Independent Accountant pursuant to Section 2.07(c). *Id.* at 13. Respondents argue that they did not agree to submit an "open-ended dispute" to the Independent Accountant, *id.*, and that Petitioners' motion to compel should be denied because Petitioners are "improperly seeking an independent review of the Company's entire books and records," *id*. at 15.

As a threshold matter, this case is unlike those cited by Respondents in support of their argument that the motion to compel should be denied because they did not refuse to arbitrate. In *AES Gener, S.A. v. Compania Carbones del Cesar, S.A.*, No. 08-cv-10407 (WHP), 2009 WL 2474192 (S.D.N.Y. Aug. 12, 2009), for example, the court refused to grant the motion to compel arbitration because at the time the petition was filed, there was no clear demand to arbitrate, nor an unambiguous refusal. *Id*. at *2. Here, Eitan served a formal demand to arbitrate on July 29, 2022, Risico Decl., Ex. I, after the parties engaged in a period of negotiations (for significantly longer than the contractually required 15-day Reconciliation Period) without success, and Respondents have refused to jointly engage the Independent Accountants. Risico Decl., Ex. H. Similarly, in *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 725 F.2d 192, 195 (2d Cir. 1984), a denial of a motion to compel arbitration was affirmed because the defendant was not in

default of any arbitration agreement since there had been no determination that the Form U-4 constituted an agreement to arbitrate. Here, Respondents do not dispute that there is a valid arbitration agreement between the parties to resolve disputes concerning the Earn-Out Payment. The motion to compel arbitration is therefore ripe for adjudication.

In contrast to those cases, Respondents here are arguing that they cannot be compelled to arbitrate – and therefore they are not refusing to arbitrate – because Petitioners have not provided a "list of disputed items" to circumscribe the scope of the arbitration. Opp. Br. at 13-15. The Court does not agree.

The Dispute Resolution Provision of the SPA must be interpreted according to its plain and unambiguous terms and it does not require such a list. *See John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001) ("Like any other contract, courts must interpret an arbitration provision to give effect to the parties' intent as expressed by the plain language of the provision."). The SPA provides that Eitan may dispute the "amount and calculation of the Earn-Out Payment" by following the procedures in Section 2.07(c). SPA § 2.08(b). It is undisputed that Petitioners timely served a Dispute Notice regarding the Earn-Out Payment under Section 2.07(c) on February 24, 2022. *See* Risico Decl., Ex. C. Section 2.07(c) states that the Dispute Notice "shall set forth in reasonable detail (i) any item on the [Earn-Out Statement] that [Eitan] disputes and (ii) the correct amount of such item." SPA § 2.07(c). Petitioners' Dispute Notice complies with this provision as it set forth details regarding the items in the Earn-Out Statement that were disputed, namely elements of the 2021 EBITDA, and provided an alternative calculation prepared by its accountants that Eitan claimed was the "correct" calculation of the 2021 EBITDA. Risico Decl., Ex. C.

The SPA then states that the parties must engage in a good faith negotiation period "to resolve any dispute" set forth in the Dispute Notice. SPA § 2.07(c). The parties undertook such negotiations for several months. Although Respondents take issue with what they deem to have been a moving target of issues raised by Petitioner, Opp. Br. at 11-12, Petitioners contend, and Respondents do not dispute, that ultimately "[t]he settlement discussions failed to resolve any issues." Reply Br. at 5. Section 2.07(c) states that if the parties "cannot resolve all disputes during the Reconciliation Period," then they shall jointly engage the Independent Accountant "to resolve any remaining dispute." SPA §2.07(c). After the negotiations were not successful, Petitioners provided Respondents with a formal notice to engage the Independent Accountant on July 29, 2022. Risico Decl., Ex. I. Section 2.07(c) provides that the Independent Accountant is then retained and undertakes the process set forth therein. *Id.* §2.07(c). The plain language of the dispute resolution process is clear, and Petitioners have complied with the required steps for raising a dispute regarding the Earn-Out Payment, to be resolved by the Independent Accountant under Section 2.07(c).

Contrary to Respondents' assertions, there is no requirement in Section 2.07(c) that Petitioners provide a "disputed items list" independent of the Dispute Notice. Opp. Br. at 10. Section 2.07(c) provides that Eitan shall provide a Dispute Notice that sets forth "in reasonable detail (i) any item on the [Earn Out Statement] that [Eitan] disputes and (ii) the correct amount of such item." SPA § 2.07(c). Petitioners satisfied this standard when they provided the Dispute Notice detailing the disputed issues with respect to the 2021 EBITDA and providing what they deemed to be the correct EBITDA calculations by their accountant BSG Valentine. Risico Decl., Ex. C. Respondents did not contend that the Dispute Notice was faulty or failed to comply with Section 2.07(c) and instead the parties proceeded to engage in the next step, negotiations during

13

the Reconciliation Period.  Indeed, on August 10, 2022, Respondents acknowledged that Petitioners "appeared to be following the process of the SPA by sending [their] calculation of the correct amounts of disputed items attached to an email from . . . BSG Valentine on March 9, 2022."  Risico Decl., Ex. J at 2.  While Section 2.07(c) does provide that the Independent Accountant shall only resolve those disputed items that the parties did not resolve during the negotiation period, since the parties here did not resolve any items, the issues set forth in the Dispute Notice (rather than a subset of them) shall then be resolved by the Independent Accountant.  SPA §2.07(c) (after the negotiation period, "the Independent Accountant [shall] resolve any remaining dispute").

The parties sharply disagree as to whether the Court should consider the details of the parties' negotiations and representations made during those negotiations.  Respondents claim that Petitioners raised new issues during negotiations, made unreasonable document requests, and backed away from agreeing to a limited list of disputed items.  Opp. Br. at 12.  Petitioners unsurprisingly disagree with this narrative and state that Respondents' submission of materials regarding this negotiation is improper under FRE 408 and Section 9.11 of the SPA.  Reply Br. at 4-7.  The Court need not reach the question of whether such communications are covered by Rule 408 or Section 9.11 because the substance of those communications is not relevant to the present motion to compel.  Section 2.07(c) requires that the parties negotiate in good faith to attempt to resolve issues raised in the Dispute Notice.  SPA §2.07(c).  Because it is undisputed that no such resolution was achieved, the issues contained in the Dispute Notice are those that shall be resolved by the Independent Accountant.

Engaging the Independent Accountant to resolve the issues raised in the Dispute Notice will not create an open-ended arbitration and independent review of the Company's entire books

and records, despite Respondents' assertions. Opp. Br. at 13-14. First, even if, as Respondents contend, the July 29, 2022 letter from Petitioners formally requesting the engagement of the Independent Accountant seeks to expand the disputes that were initially raised in the Dispute Notice, or Petitioner attempted to expand the disputed issues during the Reconciliation Period, Section 2.07(c) expressly limits the disputes that shall be arbitrated to those that were contained in the Dispute Notice and not thereafter resolved. SPA §2.07(c). It states that, if Eitan contests the Earn-Out Payment, he may file a Dispute Notice challenging "any item on the [Earn-Out Statement]," insofar as "reasonable detail" of the issue is provided and a "correct amount of such item" is provided. *Id*. Insofar as any amounts are not disputed, they shall be "final, conclusive and binding on each of the Parties." *Id*. Therefore, only items set forth in the Dispute Notice, to which a purported "correct amount of such item" was provided, are subject to the dispute resolution provision. *Id*.

Even if, as Respondents contend, the Dispute Notice broadly contests the calculations related to the 2021 EBITDA, this does not absolve Respondents of their obligations under Section 2.07(c). Section 2.07(c) does not limit the scope or number of items or issues that may be contested in the Dispute Notice. Rather, it provides that the Dispute Notice shall contain "*any item* on the [Earn-Out Statement]" that Eitan disputes, as long as "reasonable detail" and the alleged "correct amount" of such item is also provided. *See* SPA (emphasis added); *see, e.g.*, *HBC Solutions, Inc.*, 2014 WL 6982921, at *5 (holding independent accountant dispute resolution provision was not limited because, other than requiring timely service, the provision did not contain exceptions or limitations on the Dispute Notice since disputes could be noticed "in any respect with *any item* or amount showing or reflected in the Closing Certificate"). Petitioners presented a timely Dispute Notice that raised, with reasonable detail, issues regarding

the 2021 EBITDA and provided what it believed to be a correct alternative 2021 EBITDA. Risico Decl., Ex. C.  While the negotiation process in Section 2.07(c) is intended to provide the parties with time and an opportunity to narrow the disputed issues, the parties were unsuccessful in doing so.  Thus, Section 2.07(c) provides that the "remaining disputes" shall then be resolved by the Independent Accountant without any exception or limitation on the number or scope of disputes to be resolved, as long as such disputes were properly preserved in the Dispute Notice. SPA § 2.07(c).

Courts have granted motions to compel arbitration of disputes over Earn-Out Payments pursuant to clauses similar to that set forth herein where the calculation of the EBITDA was broadly challenged.  For example, in *Duafala*, 91 F. Supp. 3d at 332-33, in the context of a sale of a company, the plaintiff brought claims for, among other things, breach of contract and an accounting related to an alleged purposeful effort to shift business to avoid a year two earn out payment by creating an "undervalued and incorrect" EBITDA.  The court granted a motion to compel arbitration given that the agreement contained a dispute resolution provision for earn out payment disputes to be resolved by a neutral public accounting firm and the present dispute was "within the scope of the arbitration clause agreed by the parties to govern a dispute about the calculation of the EBITDA." *Id*. at 335; *see also E.S. Originals Inc. v. Totes Isotoner Corp.*, 734 F. Supp. 2d 523, 530-32  (S.D.N.Y. 2010) (holding that EBITDA dispute properly referred to accounting firm despite defendant's claim that the plaintiff did not provide the basis for each dispute in "reasonable detail" because "the arbitration clause designates an accounting firm to arbitrate accounting issues, and objections to earn-our payment calculations are, on their face, within the purview of this clause").

Finally, the dispute resolution process in the SPA contemplates a level of control by the Independent Accountant that would prevent a wholesale review of the Company's entire books and records. The Independent Accountant who presumably has expertise in evaluating an EBITDA can guide the parties in the submission of materials as contemplated by Section 2.07(c). SPA §2.07(c) (parties shall provide work papers, schedules and other documents "as the Independent Accountant my reasonably request"). The Independent Accountant can evaluate the items raised by the Dispute Notice, including the competing 2021 EBITDA prepared by Eitan's accountant, and work with the parties to confirm the disputed items that flow from the Notice presumably in a manner similar to that which was undertaken by the parties during the negotiation period.

Respondents' reliance on a declaration by Charles Blank, a Managing Director at Grant Thornton, that purports to set forth standard practices and processes for accounting arbitrations does not alter the Court's conclusion. *See* Blank Decl. The plain language of the contract governs the parties' obligation, regardless of any standard practices in the industry. In terms of interpreting the SPA dispute resolution process, no party contends that the SPA is ambiguous and therefore "there is no basis to look beyond the terms of the contract itself." *HSBC Solutions, Inc.*, 2014 WL 6982921, at *5 n.2 (rejecting declaration describing the purported purpose of a contractual provision in the absence of ambiguity).

## CONCLUSION

For the aforementioned reasons, Defendants' motion to compel arbitration is GRANTED. The case shall be stayed while the parties arbitrate. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347

(2d Cir. 2015) (holding that a stay rather than dismissal comports with the FAA's underlying policy of moving an arbitrable dispute to arbitration "as quickly and easily as possible").

Dated: May 18, 2023
      New York, New York         SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge